UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS  DIVISION

Bacque, et al                                                                    Civil Action No. 04-1427

versus                                                                             Judge Tucker L. Melançon

Scott, et al                                                                      Magistrate Judge C. Michael Hill


**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment filed by defendants Larry P. Bacque, Sr. and Cowboy's Western Store and Trailer Sales, Inc. ("Cowboy's") [Rec. Doc. 151] and a Motion for Summary Judgment filed by defendants the City of Scott, Chief Chad Leger, in his official capacity as Chief of Police of the City of Scott, Officer David Sonnier, individually and in his official capacity as a Police Officer for the City of Scott and Officer Byron Romero, individually and in his official capacity as a Police Officer for the City Scott ("the City of Scott defendants") [Rec. Doc. 152].  For the following reasons, the motions for summary judgment will be granted.

*I.  Background*

This action arises from an incident in which Ken Bacque was shot and killed by Officer Byron Romero on May 19, 2004 during an altercation with his father, Larry Bacque, at their place of business in Scott, Louisiana, the Horseman Western

Store. The decedent's wife and children filed this action asserting actions under 42 U.S.C. § 1983 and Louisiana state law against all defendants. Plaintiff's claim against Officer Sonnier in his individual capacity has been dismissed on the basis of qualified immunity. [Rec. Doc. 140].

## II. Summary Judgment Standard

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)(en banc). When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Celotex Corp.,* 477 U.S. at 324.

Once the movant produces such evidence, the burden shifts to the respondent to direct the attention of the court to evidence in the record sufficient to establish that there is a genuine issue of material fact requiring a trial. *Id.* The responding party may not rest on mere allegations made in the pleadings as a means of establishing a genuine issue worthy of trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49

(1986); *Little*, 37 F.3d at 1075. If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

### III. Analysis

Defendants Larry Bacque and Cowboy's and the City of Scott defendants have each filed a motion for summary judgment moving the Court to dismiss plaintiff's conspiracy claims under § 1983. Plaintiff's original Complaint set out claims against the City of Scott and Chief Leger and her First Amending Complaint added claims against Officer Sonnier, and Officer Romero. *R. 1, 5.* Plaintiff added defendants Larry Bacque and Cowboy's in her Second Amending Complaint, alleging state law claims for gross negligence. *R. 28.* In her Third Supplemental and Amended Complaint, plaintiff alleged civil conspiracy claims under § 1983 and state law against all defendants for the shooting of Ken Bacque. In their motions for summary judgment, all defendants argue that plaintiff's federal and state law claims of conspiracy should be dismissed, as plaintiff has provided no evidence under Rule 56 to support these claims. Defendants Larry Bacque and Cowboy's also assert that plaintiff's claims against them are barred by the running of prescription and that plaintiff has no cause of action against Cowboy's as it was not incorporated at the

time Ken Bacque died.

### 1. Civil Conspiracy Under § 1983

The elements of civil conspiracy are (1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right. *Kerr v. Lyford* 171 F.3d 330, 340 (5th Cir. 1999). With regard to the second element, the Fifth Circuit has also stated, "[t]o establish a cause of action based on [a § 1983] conspiracy a plaintiff must show that the defendants agreed to commit an illegal act." *Crowe v. Lucas*, 595 F.2d 985, 993 (5th Cir.1979); *See also McCall v. Peters,* 108 Fed.Appx. 862, 863, 2004 WL 1842567, *1 (5th Cir. 2004). A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but a conspiracy claim is not actionable without an actual violation of section 1983. *Hale v. Townley* 45 F.3d 914, 920 (5th Cir. 1995). "[T]o act 'under color of' state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions." *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980) (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152(1970)).

In her oppositions to defendants' motions, plaintiff reiterates the allegations in

her Third Supplemental and Amended Complaint, *R. 93*, as follows: 1) Officer Romero and the other members of the Scott police department regularly worked security for Larry Bacque at Cowboy's nightclub; 2) there was no altercation or threat of altercation ongoing when Daniel Hildalgo, the manager of Cowboy's nightclub, called the Scott police department at Larry Bacque's request; 3) upon arrival, the officers "reported to Larry [Bacque] and Hildalgo, and formulated a plan of action to force Ken Bacque to leave the Horseman, even though he owned one-half of the Horseman at the time; 4) Larry Bacque initiated the altercation between himself and Ken Bacque when he verbally and then physically assaulted Ken Bacque with horse reins; and 5) Larry Bacque retained the authority to decide if Ken Bacque should be put in the squad car or arrested if he refused.

      The record contains numerous depositions and statements related to the events covered in the allegations set forth above. There is no dispute that the Scott police officers were regularly hired to work at Cowboy's for private duty security and crowd control. Plaintiff relies on the deposition testimony of Daniel Hildalgo in support of her allegation that the Scott police were dispatched to the Horseman even though "there was no altercation, argument, or any other disturbance occurring at the Horseman which would have required the presence of the police officers." *R. 93, III ¶ 3*. She argues that Larry Bacque was a willful participant with the City of Scott and the defendant officers in an action intended to violate Ken Bacque's constitutional

rights and to commit an illegal act in furtherance of a conspiracy.

The deposition testimony of Hildalgo regarding the alleged conspiracy between the City of Scott officers and Larry Bacque provides that after Hildalgo observed Ken Bacque arrive at the Horseman, he called Larry Bacque. Hildalgo told Larry Bacque that he "had a bad feeling about [Ken Bacque] being there" because he appeared to be "mad" and in a "rage" based on his actions of hitting the rental units, making gestures with his hands and dragging out roping box cushions. *R. 151, Exh. F*. Hildalgo further noted that he felt intimidated by Ken Bacque's presence since the decision to separate the store. Larry Bacque suggested to Hildalgo that he call Chad Leger, the Scott Chief of Police, and "get his advice" as to having a policeman come over there. Hildalgo stated that Larry Bacque's intention was "when I ask him to leave, if he gets violent, we'll have some police there to help us out." *Id. at pp. 11-12.* When the police officers arrived at Cowboy's, Hildalgo told them that Ken Bacque was at the Horseman "and Larry didn't want him there. And the main reason that we had called them is when Larry asked Ken to leave, if he started an argument or got violent, we just wanted them to put him in handcuffs, put him in the car, and then Larry would decide if he wanted to have him arrested or not." *Id. at p. 20.* Upon confronting Ken Bacque, Hildalgo stated that he nor the police officers asked Ken Bacque to leave the premises and that he did not hear him refuse to leave. *Id.*

In support of her allegation that Larry Bacque acted to further his alleged

conspiracy plan by initiating the altercation between himself and Ken Bacque when he assaulted Ken Bacque with horse reins, plaintiff cites the deposition testimony of Lindsey Theriot, who was in her car in the Horseman parking lot at the time of the events leading up to the shooting. Theriot's testimony initially confirmed that in a previous sworn statement she said that Larry Bacque did not hit Ken Bacque with the reins until after Ken Bacque had both pulled a knife out, pushed the police officer to the ground and all of the policeman's guns were drawn. *R. 151, Exh. M, p. 27.* Later in the same deposition, however, she also confirmed that she stated in the previous sworn statement that Larry Bacque started the altercation when he tried to hit Ken Bacque, before Ken Bacque hit the police officer and before he pulled out his knife. *Id. at p. 30.* Upon being questioned about the inconsistency of her statement, Theriot testified that she "was not even sure" as to the sequence of events but from what she remembered, "I think that [Larry Bacque] hit [Ken Bacque] before he pushed the cop" .... and that Ken Bacque did not have the knife in his hand "until after the cop was down." *Id. at p. 31.* Theriot testified that she drove out of the parking lot before the shooting occurred. *Id. at p. 32.*

In her supplemental deposition taken on March 23, 2007, *R. 151, Exh. D*, plaintiff stated that further support for her conspiracy claims are comments made by Mary Rodriguez at plaintiff's home on the day of Ken Bacque's funeral that Larry Bacque conspired with the Scott police department to harm Ken Bacque, *Id., pp. 27-*

*37,* and a rumor that Tessa Nolen, who was at the Horseman on the day of the altercation, is going to change her testimony because she was "afraid to admit during her deposition" that she actually saw the altercation that resulted in Ken Bacque's death. *Id.,pp. 22-24, 43.*

The record shows no evidence of an actual conspiracy agreement nor any direct evidence which supports plaintiff's conspiracy theory. While proof of conspiracy may be established by circumstantial evidence and may be inferred from concert of action, *United States v. Graves*, 669 F.2d 964, (5th Cir. 1982), plaintiff has failed to present sufficient evidence of a conspiracy to survive summary judgment. Plaintiff contends that the officers arrival at the Horseman despite the lack of any disturbance requiring police presence, supports that Larry Bacque controlled the Scott police department and its officers and is evidence of their plan to violate Ken Bacque's constitutional rights. Plaintiff also contends that Hildalgo testified that Larry Bacque would have the final decision in the officers' actions taken against Ken Bacque. Hildalgo's testimony, however, provides that Larry Bacque requested he call the Scott police officers to the scene because of the ongoing separation of their business interests in the Horseman and Ken Bacque's actions upon arriving at the Horseman. Moreover, there is nothing in Hildalgo's testimony which implies that the Scott police department and its officers were under the control of Larry Bacque. Hildalgo stated that the officers were called for assistance in the event Ken Bacque was asked to

leave and he became violence or started an altercation. Police officers are routinely dispatched to a scene because of a caller's fear or concern that a disruption or altercation could occur. In the event such a disruption or altercation occurs, the police officers may be justified in making an arrest. Hildalgo's testimony falls short of constituting even circumstantial evidence of a plan or conspiracy between Larry Bacque and the City of Scott defendants officers.

As to plaintiff's assertion that "at least one witness has testified unequivocally that Larry [Bacque] began the altercation when he struck Ken [Bacque] with his horse reins" the Court must assume that plaintiff refers to the testimony of Lindsey Theriot. *R. 160.* The excerpts from Theriot's deposition cited above reveal that her testimony is far from "unequivocal" in that she contradicts herself without explaining the contradiction both in her sworn statement and again in her deposition testimony.

The record also contains testimony from other witnesses to the altercation. Each of these witnesses testified that Ken Bacque initiated the altercation after he was approached by Officer Romero and Officer Sonnier. Their testimony establishes the following sequence of events: As one of the officers was trying to guide Ken Bacque to his truck, Ken Bacque swung his arm to get the officer's hand off of him. After that, Officer Romero sprayed Ken Bacque with mace and, in doing so, Romero fell backward over a concrete parking divider onto the ground. Depo. of Larry Bacque, pp.151-52; Aff. of Larry Bacque, ¶6; Depo. of Bryan Romero, pp. 30-31; Depo of

David Sonnier, pp. 37-38. Ken Bacque then approached Officer Romero with a knife in his hand. Thereafter, Larry Bacque swung at or struck Ken Bacque with horse reins and Ken Bacque began chasing Larry Bacque with the knife. Depo. of Larry Bacque, pp.151-53; Aff. of Larry Bacque, ¶¶ 6, 7; Depo of David Sonnier, pp. 37-38; Depo. of Perjice Boudreaux, p. 14-17. In light of the evidence in the record, Theriot's conflicting testimony alone cannot defeat the motions for summary judgment. *Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 483 (5th Cir. 2002).

Finally, plaintiff was provided no evidence of Mary Rodriguez's alleged comments related to a conspiracy between Larry Bacque and the Scott police department. Rodriguez made no mention of any such conspiracy in her October 25, 2004 deposition testimony and in her June 15, 2007 affidavit refuted that she "ever, in any context whatsoever, stated to anyone that I felt that Larry Bacque and/or any member of the Scott Police Department conspired in order to bring harm to Ken Bacque...." *Aff. of Rodriguez*. Nor has plaintiff produced any evidence that Tessa Nolen ever changed her testimony.

Based on the record before the Court, plaintiff's § 1983 conspiracy claims against the defendants will be dismissed.

### 2. State Law Claims

In her Third Amending Complaint plaintiff added the following claims against Larry Bacque and Cowboy's with the allegation that they were "committed through

his [Larry Bacque's] gross and wanton negligence and in concert with the City of Scott defendants under color of law as follows: a) Striking Ken Bacque with horse reigns [sic] after a business dispute; b) Initiating the altercation which led to the death of his son, Ken Bacque; c) Multiple Batteries upon Ken Bacque; d) Wrongful death of Ken Bacque; e) Willfully assisting and engaging with the defendant police officers and the Scott police department under color of law, through his acts and the acts of those for whom he is responsible, in the deprivation of Ken Bacque's constitutionally protected rights which proximately led to Ken Bacque's death."[1]  R. 93, III, 1b.  The Court will address these claims as follows.

### a. Conspiracy Claims Against Larry Bacque and Cowboy's Acting in Concert with the Scott Police Department and its Officers

Under Louisiana law, "Article 2324 provides that '[h]e who conspires with another person to commit an intentional or willful act is answerable in solido, with that person, for the damage caused by such act.'  Article 2324, however, does not by itself impose liability for a civil conspiracy. 'The actionable element in a claim under this Article is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetrate and which they actually commit in whole or in part.'"  *Ross v. Conoco, Inc.*, 828 So.2d 546, 551-552 (La.,2002).  The underlying tort plaintiff

---

[1] Plaintiff amended her Second Amended Complaint, III, 1b, e), which provided, "e) failing to do what he should have done and see what he should have seen to avoid the untimely death of Ken Bacque." R. 28, ¶ 3.

alleges defendants agreed to perpetrate and actually committed is battery which resulted in the wrongful death of Ken Bacque. *Id.* In order to establish conspiracy in this case, plaintiff must establish that a specific agreement existed between the defendants and that Ken Bacque was battered and/or died as a result of acts in furtherance of that conspiracy. *Warren v. Bergeron,* 599 So.2d 369 (La.App. 3 Cir.,1992).

For the reasons discussed in the foregoing analysis of the federal conspiracy claims, the Court finds, therefore holds, that plaintiff's state law claims against Larry Bacque and Cowboy's while acting in concert with the City of Scott defendants and its officers will also be dismissed. Accordingly, plaintiff's state law conspiracy claims against all defendants will be dismissed.

    *b. Battery and Wrongful Death Claims Against Larry Bacque and Cowboy's*

Defendants assert that Larry Bacque's actions were in self-defense from Ken Bacque's intentional acts of assaulting and battering Larry Bacque and others while armed with a deadly weapon. Under Louisiana tort law, self-defense can be a justification for inflicting injury on another, but the force exerted in self-defense must be necessary and not excessive. "The rule is well-established in Louisiana jurisprudence that when one, though first acting in self-defense, resorts to excessive violence and unnecessary force in repelling an assault, he becomes liable as an aggressor and is subject to an action for damages for assault and battery." *Murray v.*

*Dominick*, 236 So.2d 626, 629 (La.App., 1970); *See also, Smith v. Dooley*, 591 F.Supp. 1157, 1168 (D.C.La.,1984). Louisiana law provides that a homicide is justifiable when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm. La. R.S. 14:20(1). However, a person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. La. R.S. 14:21.

Contrary to plaintiff's continued contention that Larry Bacque started the altercation with Ken Bacque, plaintiff has failed to provide any credible evidence to that effect. Depo. of Lindsey Theriot; Depo. of Larry Bacque, pp.151-52; Aff. of Larry Bacque, ¶6; Depo. of Bryan Romero, pp. 30-31; Depo of David Sonnier, pp. 37-38. Rather, as provided by the record before the Court, Larry Bacque's actions during the May 19, 2004 altercation with Ken Bacque were in self defense as they were necessary and not excessive and were taken at a time when he was in imminent danger. Even assuming *arguendo* that Larry Bacque started the altercation, the record reveals that he had withdrawn from the conflict prior to Ken Bacque drawing the knife and would therefore be entitled to assert self defense. Accordingly, the

remaining state law claims against Larry Bacque and Cowboy's will be dismissed.[2]

## IV. Conclusion

As plaintiff's vague, conclusory assertions that there is evidence of conspiracy or joint action on the part of Larry Bacque and Cowboy's and the City of Scott defendants are legally insufficient to overcome summary judgment, the Court will grant defendants' motions and plaintiff's federal and state law conspiracy claims will be dismissed. *Priester v. Lowndes County,* 354 F.3d 414, 423 (5th Cir.2004); *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994). Because plaintiff has failed to provide any credible evidence that Larry Bacque and Cowboy's initiated the May 19, 2004 altercation and/or is not entitled to assert self defense against Ken Bacque, plaintiff's remaining state law claims against them will be dismissed. The Court will deny the request for attorney's fees, expert fees and costs made by the City of Scott defendants.

---

[2] In light of its ruling, the Court need not consider Larry Bacque and Cowboy's assertions that Cowboy's should be dismissed nor that the claims should be dismissed based on prescription.